UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES C. MCCURDY,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITAITON, et al.,<br><br>    Defendants. | No.  2:17-cv-1736 TLN CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. §1983. On January 24, 2018, the court screened plaintiff's complaint as the court is required to do under 28 U.S.C. § 1915A(a). The court found that plaintiff could proceed on claims for damages arising under the Eighth Amendment for excessive force and denial of medical care against defendant Thomas as detailed in paragraphs 12 and 15 of plaintiff's complaint. Defendant Thomas has filed a motion for summary judgment with respect to those claims arguing plaintiff failed to exhaust available administrative remedies prior to filing suit as he was required to do under 42 U.S.C. § 1997(e)(a).

I. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

1

Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ."  Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

II. Plaintiff's Allegations

In his complaint, plaintiff alleges as follows:

1. On August 18, 2015, plaintiff was confined at the California Medical Facility and defendant worked there as a correctional officer.
2. At 1:00 a.m. plaintiff experienced severe pain from Irritable Bowel Syndrome.  He sought medical treatment from defendant.  Defendant declined to escort plaintiff to the clinic determining plaintiff's condition was not serious enough to warrant medical attention.
3. Plaintiff then threatened to file a grievance against defendant.  The two argued and defendant threatened plaintiff with violence.  Plaintiff repeated that he needed medical attention and threatened to file a grievance against defendant a second time.
4. Defendant then called plaintiff "dirty white trash" and threatened to move plaintiff to a different cell if he continued to "holler."  Plaintiff responded by making derogatory comments including calling defendant the "N-word."  After this, defendant left and plaintiff sat on his bunk.

5. At some point, defendant returned, entered plaintiff's cell and attacked plaintiff by swinging at plaintiff with his fists. Plaintiff fought back. Eventually the two ended up in front of plaintiff's cell where defendant struck plaintiff several more times and knocked plaintiff to the ground.

6. Eventually defendant ran from the scene and plaintiff chased him. Plaintiff briefly caught defendant, but then retreated to his cell.

7. When plaintiff returned to his cell, he attempted to attract witnesses in case defendant returned either by himself or with "backup." Correctional Officer Baumgarner ordered plaintiff to exit his cell and submit to handcuffs. Plaintiff refused and resisted by breaking windows and blocking access to plaintiff with a "swamp cooler."

8. Officers used "flash bang grenades" to attempt restrain plaintiff. Eventually, plaintiff was handcuffed and escorted to the medical clinic. In the clinic, plaintiff was restrained to a bed, his Miranda rights were read, and he was informed he would be charged with attempted murder because defendant Thomas sustained injuries.

9. Following the incident, plaintiff was transferred to California State Prison, Corcoran.

III. Defendant's Arguments and Analysis

   A. Exhaustion Law

Section 1997(e)(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." The exhaustion requirement demands "proper" exhaustion. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). In order to "properly exhaust" administrative remedies, the prisoner must generally comply with department procedural rules, including deadlines, throughout the administrative process. Jones v. Bock, 549 U.S. 199, 218 (2006); Woodford, 548 U.S. at 90-91.

At the time of the incidents at issue in this case, administrative procedures with respect to claims brought in this court by California Department of Corrections and Rehabilitation inmates are exhausted once the third level of review is complete. The third level of review constitutes the

decision of the Secretary of the California Department of Corrections and Rehabilitation (CDCR). Cal. Code Regs. tit. 15, § 3084.7.

### B. Denial of Medical Care

Defendant provides evidence indicating plaintiff never submitting a grievance concerning defendant Thomas denying plaintiff medical care on August 18, 2015. Plaintiff fails to present any evidence that he did. Further, plaintiff fails to point to anything which reasonably suggests his failure to submit a grievance regarding his denial of medical care claim was because administrative remedies were not "available" to him. Accordingly, his denial of medical care claim must be dismissed.

### C. Excessive Force

Plaintiff did file a grievance alleging defendant Thomas used excessive force against plaintiff on August 18, 2015. The grievance is dated December 27, 2016. ECF No. 67-5 at 11. On June 7, 2017, the grievance was canceled at the third level pursuant to Code Regs. tit 15. § 3084.6 (repealed June 1, 2020) for being untimely and because plaintiff "refused to be interviewed or cooperate with the interviewer." Id. at 9. Under Cal. Code Regs. tit 15. § 3084.8 (repealed June 1, 2020) inmate grievances must be submitted within 30 days of the occurrence of the events being appealed, provided the inmate had knowledge of the events. A grievance can only be cancelled pursuant to § 3084.6 for being untimely as long as "the inmate . . . had the opportunity to submit within the prescribed time constraints." In the third level decision, the reviewer specifically found that plaintiff had the opportunity to file a timely grievance. ECF No. 67-5 at 11. It does not appear plaintiff attempted to explain his delay in filing his grievance in his grievance or in his appeal to the final level.

If an inmate's administrative appeal is cancelled, the inmate can file a separate grievance regarding the cancellation decision. Cal. Code Regs. tit. 15, § 3084.6(a)(3) & (e). Plaintiff was informed of this in the final level cancellation of his grievance. Plaintiff filed such a grievance which was cancelled as untimely as it was not filed within 30 days of the date of the cancellation of his original grievance. Plaintiff also filed a grievance concerning the cancellation of the

/////

second grievance which was also cancelled since it was filed more than 30 days after the second cancellation.  ECF No. 67-5 at 7.

Most of plaintiff's opposition to defendant's motion for summary judgment is a narrative concerning prison conditions following his altercation with defendant and before he filed his grievance.  For the most part, he offers no coherent argument with sufficient and particular factual support as to whether his grievance was properly cancelled for being untimely and /or because plaintiff refused to be interviewed.   However, a few points raised are worthy of some discussion.

First, plaintiff asserts he refused to be interviewed in exercise of his <u>Miranda</u> rights since, at the time the interview was requested, the events of August 18, 2015 were under review by the Solano County District Attorney for prosecution of plaintiff.  It is at least arguable that a plaintiff should not be foreclosed from bringing a federal action because he asserted his right to remain silent.  But, in bringing this action, neither <u>Miranda</u> nor plaintiff's Fifth Amendment right to remain silent relieve plaintiff from putting forth facts sufficient to state a claim upon which relief could be granted.  So, any suggestion that plaintiff's <u>Miranda</u> or Fifth Amendment rights stand as a per se barrier to plaintiff being interviewed as part of the investigation related to his grievance is an overstatement of plaintiff's rights.

Next, plaintiff asserts that initially he was not aware that as a prisoner he needed to exhaust administrative remedies in order to seek federal relief as to prison conditions.   However, ignorance of the law, even for a prisoner proceeding pro se is generally not a valid excuse, <u>see</u> <u>Fisher v. Johnson</u>, 174 F.3d 710, 714 (5th Cir. 1999), and plaintiff fails to point to anything justifying a departure from that rule here.

Finally, plaintiff argues that his administrative remedies were actually exhausted at the second level of the review process since, at that level, his grievance was "partially granted." However, in the letter informing plaintiff that his grievance had been "partially granted," plaintiff was informed that the final level of review was still available to him and that his administrative remedies had not yet been exhausted. FCF No. 67-5 at 14.  Even in plaintiff's request for review at the final level, plaintiff indicated he was not satisfied with the second level decision. <u>Id.</u> at 12- 13.  Accordingly, plaintiff's argument that his administrative remedies were exhausted after the

second level of review is frivolous.

IV. Conclusion

For all the foregoing reasons, the court will recommend that defendant's motion for summary judgment be granted and plaintiff's remaining claims be dismissed for failure to exhaust administrate remedies.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Thomas's motion for summary judgment (ECF No. 67) be granted;

2. Plaintiff's remaining claims be dismissed for failure to exhaust available administrative remedies; and

3. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 30, 2020

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
mccu1736.msj